**BRICKELL PARTNERS, Plaintiff,**

v.

**William A. WISE, Robert G. Phillips, James H. Lytal, H. Brent Austin, Michael B. Bracy, H. Douglas Church, Malcolm Wallop, El Paso Energy Corporation, Deeptech International, Inc. and Crystal Gas Storage, Inc., Defendants,**

and

**El Paso Energy Partners, L.P., Nominal Defendant.**

Civ.A. No. 18145.

Court of Chancery of Delaware, New Castle County.

Submitted: June 26, 2001.
Decided: Aug. 20, 2001.

Norman M. Monhait, of Rosenthal, Monhait, Gross & Goddess, Wilmington; of counsel: Matthew M. Houston, Wechsler Harwood Halebian & Feffer, New York City, for Plaintiff.

James F. Burnett, of Potter Anderson & Corroon, Wilmington, for Defendants.

Henry E. Gallagher, Jr., of Connolly Bove Lodge & Hutz, Wilmington, for Nominal Defendant.

## OPINION

STRINE, Vice Chancellor.

Plaintiff Brickell Partners brought this action challenging the acquisition of Crystal Gas Storage, Inc. by El Paso Energy Partners, L.P. ("El Paso" or the "Partnership"). Brickell Partners is a limited partner in El Paso and has sued derivatively on its behalf. Crystal Gas is owned by El Paso Energy Corp. ("Energy"), which also owns and controls El Paso's general partner, DeepTech International, Inc. Energy also holds 34.5% of El Paso's units, which are traded on the New York Stock Exchange.

El Paso purchased Crystal Gas for $170 million in newly issued El Paso preference units. The complaint alleges that this consideration exceeded "the value of Crystal Gas, its assets and businesses"[1] and that the transaction is therefore substantively unfair to El Paso. By way of support for this assertion, the complaint simply notes that "for the quarter ended September 30, 1999, Crystal Gas reported a decline in revenues of $1.2 million and a decline for the nine months of that fiscal year of about $3.5 million."[2]

The complaint also challenges the procedures used to effect this "conflict" transaction. The only procedural protection used by El Paso to ensure the interests of unitholders other than Energy was to subject the transaction to "Special Approval" by DeepTech's "Conflicts and Audit Commit-

tee." The two members of that Committee were defendant Michael B. Bracy, a director of DeepTech and a former employee of Energy, and defendant H. Douglas Church, another director of DeepTech.

The complaint alleges that the process was "irreparably impaired" because Bracy and Church owed fiduciary duties to DeepTech as DeepTech directors, and thus could not fairly opine on a transaction in which DeepTech and El Paso had conflicting interests. The complaint also charges that Bracy's former status as an employee in an unspecified position at Energy compromised him further.

■　The defendants—principally DeepTech and its directors—have filed a motion to dismiss the complaint.[3] According to the defendants, the El Paso Partnership Agreement precludes the plaintiff's claims for breach of fiduciary duty in connection with the Crystal Gas acquisition. In particular, the defendants emphasize the following provision of the Partnership Agreement:

6.9　*Resolution of Conflicts of Interest.* (a) Unless otherwise expressly provided in this Agreement … *whenever a potential conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership,* the Operating Companies, any Partner or any Assignee, *on the other hand, any resolution or course of action in respect of such conflict of interest* shall be permitted and deemed approved by all Partners, *and shall not constitute a breach of this Agreement,* of the Operating Companies Agreements, of any agreement contem-

---

1.　Comp. ¶ 17.

2.　*Id.*

3.　I address this motion applying the well-established standards governing a Rule 12(b)(6) motion. *See, e.g., Grobow v. Perot,*

Del.Supr., 539 A.2d 180, 187 n. 6 (1988). The recitation of the facts is drawn directly from the plaintiff's complaint, which is quite brief, and I have drawn all reasonable inferences therefrom in plaintiff's favor.

plated herein or therein, *or of any duty stated or implied by law or equity, if the resolution or course of action is or, by operation of this Agreement, is deemed to be, fair and reasonable to the Partnership. The General Partner shall be authorized*, but not required in connection with its resolution of such conflict of interest, to seek *Special Approval of a resolution of such conflict or course of action. Any conflict of interest and any resolution of such conflict of interest shall be conclusively deemed fair and reasonable to the Partnership if such conflict of interest or resolution is (i) approved by Special Approval*, (ii) on whole, on terms no less favorable to the Partnership than those generally being provided to or available from unrelated third parties *or* (iii) fair to the Partnership, taking into account the totality of the relationships between the parties involved (including other transactions that may be particularly favorable or advantageous to the Partnership).... The General Partner (including the Conflicts and Audit Committee in connection with Special Approval) shall be authorized in connection with its determination of the "fair and reasonable" nature of any transaction or arrangement and in its resolution of any conflict of interest to consider (i) the relative interests of any party to such conflict, agreement, transaction or situation and the benefits and burdens relating to such interest; (ii) any customary or accepted industry practices and any customary or historical dealings with a particular Person; (iii) any applicable generally accepted accounting or engineering practices or principles; and (iv) such additional factors as the General Partner or such Conflicts and Audit Committee deter-

mines in its sole discretion to be relevant, reasonable or appropriate under the circumstances. Nothing contained in this Agreement, however, is intended to nor shall it be construed to require the General Partner or such Conflicts and Audit Committee to consider the interests of any Person other than the Partnership. In the absence of bad faith by the General Partner, the resolution, action or terms so made, taken or provided by the General Partner with respect to such matter shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other law, rule or regulation.[4]

Pursuant to the Agreement, "Special Approval" means "approval of a majority of the members of the Conflicts and Audit Committee of the Partnership."[5] Such Special Approval was obtained for the Crystal Gas transaction.

■  The defendants argue that § 6.9 of the Agreement supplants the traditional default fiduciary duties that would otherwise apply to the Crystal Gas deal in the absence of contractual modification. The fiduciary duty of loyalty would, if unmodified, have required the defendants to demonstrate that the Crystal Gas acquisition was entirely fair. The defendants note that 6 *Del. C.* § 17–1101(c) statutorily authorized the parties to the Partnership Agreement to restrict the fiduciary duties owed to El Paso by DeepTech and the other defendants. As this court has noted many times in recent years, "principles of contract preempt fiduciary principles where the parties to a limited partnership

---

4. Partnership Agreement § 6.9 (emphasis added).

5. *Id.* at A–10.

have made their intentions to do so plain."[6]

Here, the plain and unambiguous language of § 6.9 of the Partnership Agreement displaces traditional fiduciary duty principles. In place of such principles, the Agreement provides limited partners solely with the protection of Conflicts and Audit Committee Review when DeepTech decides to seek "Special Approval" of a conflict transaction, as it did here. Such "Special Approval" is "conclusive[ ]" evidence of the "fair[ness] and reasonable[ness]" of a conflict transaction, and bars any challenge to the transaction based on the Agreement, other contracts, or default principles of law or equity.[7] As a result, the plain language of the Agreement appears to compel a dismissal of the complaint, assuming the plaintiff has not pled facts suggesting that the defendants did not comply with § 6.9 itself.

■ To meet this challenge, the plaintiff has argued that § 6.9 is ambiguous because the Agreement never defines precisely who shall serve on the Conflicts and Audit Committee. According to plaintiff, the reasonable expectation of a limited partner would be that the Committee would be comprised of persons with no relation or duty at all to DeepTech. Because the two members were both DeepTech directors, the plaintiff argues that the Committee process did not accord with that supposed expectation and therefore that the defendants may not rely upon the "Special Approval" safe harbor.

The problem for the plaintiff is that its argument (which sounds somewhat plausible in the abstract) has little force in the precise context governed by the Partnership Agreement. As this court has noted elsewhere, directors of corporate general partners occupy a strange and unsettling position. By definition, they find themselves in a position of on-going conflict because they owe fiduciary duties to the corporate general partner (on whose board they serve) and fiduciary duties to the limited partnership governed by the corporate general partner.[8] Even when such directors have no material self-interest in the success of the corporate general partner as an entity or the partnership itself, they owe duties to two entities with potentially conflicting interests. Thus, their situation is subtly but critically different from the position of an outside, "independent" director of a corporation. An ideal corporate independent director owes her fidelity only to the corporation and its stockholders, to the exclusion of any potentially conflicting constituency. That can never be so with the director of a corporate general partner forced to opine on a transaction between an affiliate of the corporate general partner and the partnership.

This reality, however, dissipates the force of the plaintiff's argument. Although the Partnership Agreement does not define the Conflicts and Audit Committee of DeepTech, the very use of the term Committee implies that the group will be comprised of directors of DeepTech. It may be that the Agreement's use of the

---

6. *Sonet v. Timber Co.*, Del.Ch., 722 A.2d 319, 322 (1998).

7. Partnership Agreement § 6.9.

8. *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, Del.Ch., C.A. No. 15754, 2000 WL 1476663, at *22, Strine, V.C. (Sept. 27, 2000) (addressing a situation where the partnership agreement contemplated that the non-management directors of a corporate general partner "would be the ones entrusted with balancing the interests of the corporate general partner and its affiliates against the interests of the other unitholders").

term Conflicts and Audit Committee and its conferral of certain types of authority on that Committee would lead a reasonable investor to conclude that the Committee would be comprised solely of *non-management directors* of DeepTech. What it cannot be reasonably read as implying is that the Committee would be comprised of members with no relationship to DeepTech at all.

Neither Bracy nor Church is alleged to be a current member of the management of DeepTech. Neither is alleged to be a stockholder of Energy (or even of Deep-Tech for that matter). At most, the plaintiff avers that Bracy used to work for Energy. When and for how long the plaintiff does not say. Even more important, the plaintiff does not allege facts from which it can be inferred that Bracy was beholden to Energy for material, personal reasons separate and apart from the structural conflict he inherently faced as a DeepTech director.[9]

Therefore, the plaintiff has failed to plead facts that indicate that the defendants' conduct is not insulated from challenge because of the Conflicts and Audit Committee's Special Approval of the Crystal Gas transaction. For that reason the plaintiff's complaint is dismissed with prejudice.

---

9. The complaint is also devoid of even a conclusory allegation that DeepTech or any other defendant tainted the Special Approval process by defrauding or otherwise tainting the work of the Conflicts and Audit Committee.