IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, | § § § | No. 291, 2016 |
| Plaintiff Below, Appellant, | § § § § § | Court Below: Court of Chancery of the State of Delaware |
| v. | § § | |
| TC PIPELINES GP, INC., TRANSCANADA AMERICAN INVESTMENTS, LTD., and TRANSCANADA CORPORATION, | § § § § § | No. 11603-VCG |
| Defendant Below, Appellees, | § § § | |
| and | § § | |
| TC PIPELINES, LP, | § § § | |
| Nominal Defendant Below, Appellee. | § § | |

Submitted: December 14, 2016
Decided: December 19, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

## O R D E R

(1) The appellants challenge a drop-down transaction between a limited partnership—TC Pipelines—and the ultimate owner of its general partner—

TransCanada Corporation.[1]  The limited partnership agreement provides, in relevant part, that conflicted transactions will be "conclusively deemed fair and reasonable" to the limited partnership if the general partner obtains "Special Approval"[2]—approval by a Conflicts Committee made up of two or more directors "who are neither security holders, officers nor employees of the General Partner nor officers or employees of any Affiliate of the General Partner."[3]  When a transaction has been deemed fair and reasonable by Special Approval or some other method outlined in the limited partnership agreement, the agreement provides that the transaction is conclusively: i) approved by the limited partners, ii) not a breach of the limited partnership agreement, and iii) not a breach of "any duty stated or implied by law or equity."[4]  Below, the Court of Chancery dismissed the complaint in a thorough written decision.  The appellant's complaint focused singularly on alleging: i) that the drop-down transaction was not economically fair to the limited partnership, ii) that if the transaction could be thought unfair an inference arose that the Conflicts Committee therefore must have acted in subjective bad faith, iii) that it was implied in the limited partnership agreement that the Conflicts Committee must act in good faith, and, therefore, iv) that this

---

[1] *Emps. Ret. Sys. of St. Louis v. TC Pipelines GP, Inc.*, 2016 WL 2859790, *1–2 (Del. Ch. May 11, 2016) (describing the transaction).
[2] App. to Appellant's Opening Br. at A159 (Second Amended and Restated Agreement of Limited Partnership of TC Pipelines, LP § 7.9(a)) [hereinafter *Limited Partnership Agreement*].
[3] *Id*. at A122 (*Limited Partnership Agreement* § 1.1).
[4] *Id*. at A159 (*Limited Partnership Agreement* § 7.9(a)).

2

bare allegation of economic unfairness thus supported a claim for breach of the implied covenant of good faith and fair dealing. The Court of Chancery rejected the viability of this theory, noting that the appellant had not pled any facts supporting an inference that the Conflicts Committee had any improper motive or other specific reason to act in bad faith, had not pled any specific acts of misfeasance by the Conflicts Committee in its deliberation process, and that the limited partnership agreement made the Conflicts Committee's judgment conclusive, and thus allowing a complaint to proceed solely because the transaction's economic merits were subject to reasonable questions would be inconsistent with the evident purpose of the safe harbor created by Conflicts Committee approval in the agreement. In so ruling, the Court of Chancery relied upon earlier authority of this Court and the Court of Chancery itself[5] and did not rule out the possibility that specific circumstances could be pled regarding the motives or other conduct of a Conflicts Committee that could give rise to an

---

[5] *See* 2016 WL 2859790 at \*5–6; *see also Haynes Family Trust v. Kinder Morgan G.P., Inc.*, 135 A.3d 76, 2016 WL 912184, at \*1–2 (Del. Mar. 10, 2016) (TABLE) ("[T]here was no room for a substantive judicial review of the fairness of the transaction because the general partner had complied with its contractual duties in the approval process of the merger and that compliance conclusively established the fairness of the transaction, precluding the judicial scrutiny that the unitholders now seek."); *Gerber v. Enter. Prod. Holdings, LLC*, 67 A.3d 400, 418 (Del. 2013) (considering application of implied covenant in limited partnership context), *aff'd in part rev'd in part on other grounds*, 68 A.3d 665, 2013 WL 1914714 (Del. 2013), *overruled in part on other grounds*, 67 A.3d 808 (Del. 2013); *Brickell Partners v. Wise*, 794 A.2d 1, 4 (Del. Ch. 2001) (interpreting similar transaction approval provisions).

implied covenant claim.[6] In other words, we read the Court of Chancery as having issued a careful, case-specific ruling that addressed the stark argument made by the appellant, in which its sole basis for alleging an implied covenant claim was its contention that the drop-down transaction was economically unfair to the limited partnership.

(2) The Court of Chancery rejected that contention, holding that the appellant could not escape the effect of the conflict of interest provisions of the limited partnership agreement solely by contending that the Conflicts Committee had approved an unfair transaction and must therefore have acted in bad faith. On appeal, the appellant reiterates its arguments below that pleading facts supporting an inference that a transaction is unfair creates an inference that the Conflicts Committee acted in bad faith and thus states an implied covenant claim.[7]

(3) The appellant also sought to buttress that core argument by noting that the limited partnership agreement required the Conflicts Committee to consider the

---

[6] 2016 WL 2859790 at *7 n.48 (observing that bribery of otherwise-independent directors by the general partner would have been the sort of unanticipated situation meriting application of the implied covenant).

[7] We note that the appellant has not attempted to argue that it has pled facts that would suggest that the drop-down transaction satisfied the stringent definition of waste, that no reasonable person of good faith would have approved the transactions as fair to the limited partnership. *See* STEPHEN A. RADIN, THE BUSINESS JUDGMENT RULE 388 (2009) ("A waste claim requires a showing that the corporation has entered into a transaction in which it received consideration 'so inadequate in value that no person of ordinary, sound business judgment would deem it worth what the corporation has paid.'" (quoting *Grobow v. Perot*, 539 A.2d 180, 189 (Del. 1988))); *see also Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 901 (Del. Ch. 1999) ("The test for waste is whether any person of ordinary sound business judgment could view the transaction as fair."). Rather, the plaintiff has simply argued that the transaction is not, in its view, fair, and pled some facts to support that contention.

4

fairness and reasonableness of the drop down "in the context of all similar or related transactions,"[8] and that, because the drop down was, in the appellant's view, less favorable than two previous drop downs, an inference arose that the Conflicts Committee acted in conscious bad faith to approve an unfair transaction. But, the appellant never pled that the Conflicts Committee did not know about those transactions or consider them in its deliberations. In fact, at oral argument before this Court, the appellant admitted that this was the case, that the Conflicts Committee likely knew about the previous transactions, and that its argument was that because the Committee members knew the earlier transactions were more favorable, the Conflicts Committee could not have approved the drop-down transaction at issue in good faith. Thus, the appellant's argument before the Court of Chancery boiled down to saying that because the price was arguably less favorable to the limited partnership in this drop down than in earlier drop downs, the Conflicts Committee must have acted in bad faith—an argument the Vice Chancellor rejected.

(4)   We agree with the Court of Chancery's conclusion that the appellant's arguments are without merit. As in analogous circumstances in the corporate context,[9] the appellant cannot escape the conclusive effect given to Conflicts

---

[8] *See* App. to Appellant's Opening Br. at A160 (*Limited Partnership Agreement* § 7.9(c)).
[9] *E.g.*, *In re MFW Shareholders Litigation*, 67 A.3d 496, 518 (Del. Ch. 2013), *aff'd sub nom.*, *Kahn v. M&F Worldwide Corp*, 88 A.3d 635 (Del. 2014) ("For a court to determine whether a

5

Committee approval solely by attacking the fairness of the underlying transaction. If that was the case, the safe harbor would be virtually no safe harbor at all as every case would proceed to discovery so long as a plaintiff could plead facts suggesting a rational person could deem the transaction unfair. Rather, as the Court of Chancery explained, the implied covenant is narrowly applied, and if a plaintiff is to invoke it, the plaintiff must plead some specific facts suggesting that the Conflicts Committee process was tainted in some specific way by unanticipated behavior, such as the example of bribery the Vice Chancellor pointed to, or other factors bearing on whether the Conflicts Committee process fulfilled its evident contractual purpose. Like the Court of Chancery, we do not rule out the possibility that future plaintiffs may invoke the implied covenant successfully in this context, but like the Court of Chancery, we agree that if a safe harbor provision such as the limited partnership agreement's § 7.9(a) applies, plaintiffs may not invoke the covenant solely by contending that a transaction is unfair to the limited partnership and that the Conflicts Committee therefore must have acted in bad faith. Also, like the Court of Chancery, we believe it is not the role of courts to identify future situations in which the implied covenant may be invoked. Rather, it is up to

---

special committee was effective in obtaining a good economic outcome involves the sort of second-guessing that the business judgment rule precludes. When a committee is structurally independent, has a sufficient mandate and cannot be bypassed, and fulfills its duty of care, it should be given standard-shifting effect."). This Court later reaffirmed that the pleading stage is an appropriate point to determine if a transaction complied with *MFW*'s procedural requirements. *Swomley v. Schlecht*, 128 A.3d 992, 2015 WL 7302260 (Del. Nov. 19, 2015) (TABLE) (affirming *Swomley v. Schlecht*, C.A. No. 9355-VCL (Del. Ch. Aug. 27, 2014)).

plaintiffs in specific cases to develop facts relevant to the situation they are addressing and to plead how those facts support a claim.

NOW, THEREFORE IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice